UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Rachel Lyn Grant

    v.                                 Civil No. 14-cv-351-JD
                                          Opinion No. 2015 DNH 059
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


Rachel Lyn Grant seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for supplemental security income.  Grant moves to reverse and remand the decision, contending that the Administrative Law Judge ("ALJ") erred in concluding that she was not disabled.  The Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's

factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).  Substantial evidence, however, "does not approach the preponderance-of-the-evidence standard normally found in civil cases."  Truczinskas v. Dir., Office of Workers' Compensation Programs, 699 F.3d 672, 677 (1st Cir. 2012).

### Background

The background information is summarized from the parties' joint statement of material facts, document no. 10.

Grant was twenty years old when she first applied for social security benefits.  While Grant was in school, testing results showed that she was in the average to low average range of intellectual functioning, and she was diagnosed or coded with attention deficit hyperactivity disorder ("ADHD").  Grant received special education services beginning in preschool.  She is a high school graduate and worked at Dunkin Donuts until sometime in 2010.  Grant has two children.

After Grant applied for supplemental security income, she was evaluated by Joseph F. Wojcik, Ph.D for the Maine Disability Determination Services.  Based on test results, Grant's intellectual functioning was determined to be in the borderline classification for intelligence.  Dr. Wojcik thought that the test scores were not representative of Grant's overall ability to function and that she could grasp directions with one or two steps and do routine job assignments.

On July 30, 2012, Jason Merrin, Ph.D., evaluated Grant's mental status based on an examination and his review of her records.  Dr. Merrin noted that Grant had a slow flow of cognition but no psychotic symptoms and that she reported no anxiety or panic symptoms.  Grant's mental status test provided normal results.  During examination on a second test, Grant had attention and concentration within normal limits but showed borderline working habits, poor frustration tolerance, borderline rapport with Dr. Merrin, and a sullen mood and affect.  Her scores on that test were in the borderline range. In Dr. Merrin's opinion, Grant could manage her own funds as long as she maintained her medications, but she might need assistance with delayed memory.  Dr. Merrin also noted that Grant's persistence was borderline, her sustained concentration was within normal limits when she was medicated, her daily

activities seemed intact, but her social interaction and adaptation were impaired.

Lewis F. Lester, Ph.D., reviewed Grant's record on August 10, 2012.  Dr. Lester found that Grant had understanding and memory limitations, concentration and persistence limitations, social interaction[1] limitations, and adaptation limitations. Despite her limitations, Dr. Lester found that Grant could understand and remember simple tasks and procedures, could be reliable and sustain consistent pace in two-hour blocks in a work day and week, and could interact with co-workers and supervisors but not the general public.  He also found that the diagnosis of ADHD was not established by the record.

On March 27, 2013, Grant was examined by Jeffrey M. Wagner, Ph.D., at the request of Grant's attorney.  Based on his examination and review of Grant's records, Dr. Wagner diagnosed major depression, pain disorder, social anxiety disorder, ADHD, and borderline intellectual functioning.  He found that Grant was incapable of sustaining independent and full-time gainful employment.

After her application for benefits was denied, Grant requested a hearing before an ALJ that was held on April 9,

---

[1]At the time of the hearing, Grant had one child and was pregnant with her second child.

4

2013.  Grant testified at the hearing that she graduated from high school but attended special education classes while in school and had the most difficulty with reading, spelling, and writing.  She also said that she had difficulty focusing and that she experienced panic attacks and depression a couple of times each week.

Grant testified that she had a driver's license and a car but her boyfriend drove her places in the car.  She testified that her boyfriend's parents helped her take care of her baby boy.  She also said that she usually had someone else with her when she went out because she did not like to go out or to shop alone.

The ALJ issued the decision on Grant's application on April 26, 2013.  The ALJ found that Grant had severe impairments which were "an organic mental disorder/borderline intellectual functioning with associated learning disorder and attention-deficit hyperactivity disorder; and an affective disorder/depression."  Despite those impairments, the ALJ found that Grant had the residual functional capacity to perform a full exertional range of work, with simple instructions and simple tasks on a consistent schedule and that she could interact with coworkers and supervisors but not the general public.  The ALJ also found that Grant could adapt to occasional

routine changes in the workplace.  Because the ALJ found that Grant's non-exertional limitations did not significantly erode the number of unskilled jobs, he concluded, based on section 204.00 of the Medical Vocational Guidelines ("the Grid") that Grant was not disabled.  The Appeals Council denied Grant's request for review.

## Discussion

Grant moves to reverse and remand the decision on the grounds that the ALJ erred in relying on the Grid, erred in giving little weight to Dr. Wagner's opinion, and erred in failing to follow the guidance provided by Titles II and XVI: Documenting and Evaluating Disability in Young Adults, SSR 11-2p, 2011 WL 4055665 (Sept. 12, 2011) ("SSR 11-2p").  The Acting Commissioner moves to affirm, contending that the ALJ properly relied on the Grid, properly evaluated Dr. Wagner's opinion, properly considered Grant's educational records in accordance with the guidance of SSR 11-2p.

## A.  Expert Opinions

The ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 416.927(b).  Medical opinions are evaluated based on

the nature of the medical source's relationship with the
claimant, the consistency of the opinion with the other record
evidence, the medical source's specialty, and other factors that
may be brought to the ALJ's attention.  § 416.927(c).
Generally, more weight is given to the opinion of a medical
source who examined the claimant.  § 416.927(c)(1).  A medical
source's opinion that the claimant is "disabled" or "unable to
work" does not establish that finding, which is the
responsibility of the Acting Commissioner.  § 416.927(d)(1).

### 1. Dr. Wagner

Grant contends that the ALJ erred in failing to give
substantial weight to the opinion provided by Dr. Wagner because
Dr. Wagner reviewed all of the record evidence and because his
opinion was consistent with the record evidence.  Dr. Wagner
diagnosed Grant with major depression, pain disorder, social
anxiety disorder, ADHD, and borderline intellectual functioning.
He stated that in his opinion Grant could not sustain
"independent, full time gainful employment."

The ALJ explained that he gave little weight to Dr.
Wagner's opinion, noting that Dr. Wagner was not a treating
source, because Dr. Wagner's description of Grant's presentation
during examination was inconsistent with her record.

Specifically, while Dr. Wagner noted that Grant had severe depression, had severe anxiety and panic attacks, and obsessive-compulsive tendencies, the ALJ cited record evidence showing that Grant did not experience any of those symptoms.  The ALJ also noted that Dr. Wagner's opinion that Grant was unable to perform the basic mental demands of unskilled work was inconsistent with Grant's treatment records, particularly the treatment notes provided by ARPN Kathleen MacLean, and with Grant's level of daily activity.

Although Grant cites some evidence that she interprets to support Dr. Wagner's opinion, other evidence, as cited by the ALJ, is inconsistent with Dr. Wagner's opinion.  Therefore, the ALJ's evaluation of Dr. Wagner's opinion comports with the requirements of § 416.927(c).

2.  Dr. Lester

Grant also faults the ALJ for relying on the opinion provided by Dr. Lester.  ALJs are required to consider the opinions of state agency psychological consultants about the nature and severity of an applicant's impairments because state agency consultants "are experts in the Social Security disability programs."  Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996) ("SSR 96-6p").  The ALJ may rely on the opinions of state agency consultant psychologists, using the same considerations that apply to treating or examining medical sources to assess those opinions. § 416.927(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); SSR 96-6p.  A state agency psychologist's opinion may provide substantial evidence to support the ALJ's findings when the psychologist reviewed most of the relevant record evidence and particularly when other opinions in the record reinforce that opinion.  Pelletier v. Colvin, 2015 WL 247711, at *14 (D.R.I. Jan. 20, 2015) (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)); Howard v. Colvin, --- F. Supp. 3d ---, 2014 WL 5361533, at *8 (D. Mass. Oct. 22, 2014).

The ALJ explained that he relied on Dr. Lester's opinion because as a state agency consultant Dr. Lester is familiar with the social security standards and because the opinion was consistent with Grant's record.  Grant contends that some of the evidence in the record, as she interprets it, is not consistent with Dr. Lester's opinion.  The evidence Grant cites does not

directly contradict Dr. Lester's findings, and other evidence in the record supports those findings.

Dr. Lester's opinion is based on most of Grant's record. Although Dr. Wagner's opinion postdated Dr. Lester's opinion, the ALJ found that opinion to be entitled to little weight.  A state agency psychologist's opinion based on a review of an incomplete record may still constitute substantial evidence as long as the more recent evidence does not show "a sustained (and material) worsening in Plaintiff's condition."  Phan v. Colvin, 2014 WL 5847557, at *15 (D.R.I. Nov. 12, 2014).  Grant has not shown that Dr. Wagner's opinion constitutes evidence of a worsening in her condition.

Therefore, the ALJ properly assessed the medical evidence.


B.  SSR 11-2p Guidelines

Grant contends that the ALJ erred by not following the guidelines provided by SSR 11-2p for evaluating disability in young adults.  Grant argues that the ALJ did not consider her Individualized Education Plan ("IEP") or her limitations as provided in her school records as required by SSR 11-2p. Specifically, Grant faults the ALJ for failing to consider that she graduated from high school with accommodations and based on

expectations that were lower than those for a student without impairments.

SSR 11-2p directs an ALJ to use the same definition of disability for young adults that is used for older adults and to consider information from medical sources, non-medical sources, and school programs.  Contrary to Grant's view of the ALJ's decision, he did consider Grant's special education background and her school records.  The ALJ stated that Grant's history and educational records showed a "longstanding history for early developmental delays in speech and language, cognitive deficits in her ability to read, write, and spell, and behavioral characteristics consistent with a diagnoses [sic] for attention-deficit hyperactivity disorder."  Because of those delays, deficits, and behavior, Grant "received assistance through special needs classes and her academic progress was monitored through an individualized education plan."

Grant asserts that the ALJ failed to consider the "extensive academic accommodations" she received during high school.  The accommodations she cites are that she had help in class from "facilitators" who read directions to her, she was not penalized for spelling errors, she was given extra time for extensive reading requirements, she received study guides, and

she was given biweekly progress reports.  Grant also notes her low grades in high school.

The ALJ stated that Grant's records showed "ongoing special education classes, further behavioral testing, and the continued use of an individualized education plan and special education resources."  After noting Grant's use of an IEP and special education resources through high school, the ALJ noted that Grant graduated from high school with a 2.4 grade point average. The ALJ also stated that Grant was taking classes in the evening toward a cosmetology certificate, while she was caring for her twenty-month old son.  Although Grant argues that the ALJ put too much weight on her graduation from high school, when she required special education assistance, she does not show that she graduated from high school based on significantly lower criteria than other graduates so that her graduation should not be considered as part of her educational background.

SSR 11-2p "provides guidance as to what types of evidence the ALJ should consider in cases involving young adults; it does not mandate a finding of disability merely because such records exist and/or demonstrate limitations."  McCarl v. Colvin, 2015 WL 540067, at *4 (W.D. Pa. Feb. 10, 2015).  Under the circumstances, the ALJ could interpret Grant's graduation positively as evidence of her ability, despite her impairments.

See Eissfeld v. Comm'r of Social Security, 2014 WL 1874073, at
*4 (D. Or. May 8, 2014).  In addition, the ALJ noted other
evidence that showed Grant's ability to function.

C.  Reliance on the Grid

At the fifth step of the sequential analysis under 20
C.F.R. § 416.920, the Acting Commissioner bears the burden of
proving that the claimant is employable.  Heggarty v. Sullivan,
947 F.2d 990, 995 (1st Cir. 1991).  That burden may be satisfied
by using the Grid as long as the claimant's non-exertional
impairments do not significantly erode the occupational base at
the identified exertional level.  Nguyen, 172 F.3d at 36; Ortiz
v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir.
1989).  When the ALJ identifies non-exertional impairments, the
ALJ may need the assistance of a vocational expert to determine
whether those impairments significantly erode the occupational
base.  Nguyen, 172 F.3d at 36.

Grant argues that the ALJ erred by relying on the Grid to
find that she was not disabled.  She asserts, relying on Titles
II and XVI:  Capability to Do Other Work--the Medical-Vocational
Rules as a Framework for Evaluating Solely Nonexertional
Impairments, ("SSR 85-15") 1985 WL 56857, that the ALJ's finding
that she can adapt to occasional routine changes in the

13

workplace precludes use of the Grid in her case.  In support, Grant cites a passage from SSR 85-15 which states that the demands of "remunerative, unskilled work" include the abilities, among other things, "to deal with changes in a routine work setting" and that "[a] substantial loss of ability to meet" the listed work activities "would severely limit the potential occupational base."

Under SSR 85-15, only "a substantial loss" of the ability to deal with changes in a routine work setting would severely limit the potential occupational base so as to preclude use of the Grid.  See also Ortiz, 890 F.2d at 524.  Grant cites no authority to show that a limitation to "occasional routine changes in the workplace" would constitute a substantial loss of the ability to deal with change.  As the Acting Commissioner points out, in Swormstedt v. Colvin, 2014 WL 1513347, at *6 (D. Me. Apr. 16, 2014), the court concluded that a limitation to "adapting to occasional changes in the workplace," along with other limitations, would have "no more than a negligible effect on the unskilled occupational base" and did not preclude use of the Grid.  See also Shedd v. Colvin, 2015 WL 347825, at *7 (D. Me. Jan.26, 2015); Buschie v. Astrue, 2012 WL 463443, at *5 (N.D.N.Y. Feb. 13, 2012).

A vocational expert was available to testify at the hearing before the ALJ but was not asked to do so.  Generally, it would be better practice for the ALJ to ask the vocational expert whether the claimant's nonexertional limitations significantly erode the occupational base.  See, e.g., Miller v. Colvin, 2014 WL 4181472, at *6 (S.D. W.Va. Aug. 20, 2014).  In this case, however, Grant has not shown that the ALJ improperly relied on the Grid.


Conclusion

For the foregoing reasons, the applicant's motion to reverse and remand (document no. 8) is denied.

The Acting Commissioner's motion to affirm (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.


_____
Joseph DiClerico, Jr.
United States District Judge


March 23, 2015
cc:  Laurie Alice Smith, Esq.
     D. Lnce Tillinghast, Esq.
     Robert J. Rabuck, Esq.